UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| Francisco Marin, | § | |
|   Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 7:18-CV-0002 |
| | § | |
| City of Pharr, Texas, | § | JURY DEMANDED |
| Ambrosio Hernandez, | § | |
| Eleazar Guajardo, Roberto Carrillo, | § | |
| Ed Wylie, Juan G. Guerra | § | |
|   Defendants | § | |

**Plaintiff's First Amended Complaint**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES **FRANCISCO MARIN**, Plaintiff in this action, complaining of and about the **CITY OF PHARR, TEXAS, AMBROSIO HERNANDEZ, ELEAZAR GUAJARDO, ROBERTO CARRILLO, ED WYLIE,** and **JUAN G. GUERRA**, Defendants in this action, and for cause of action would show the following:

**I. Parties and Service**

1.    Plaintiff **FRANCISCO MARIN** is an individual residing in McAllen, Hidalgo County, Texas.

2.    Defendant **CITY OF PHARR, TEXAS** is a municipal corporation which has made an appearance herein.

3.    Defendants **AMBROSIO HERNANDEZ, ELEAZAR GUAJARDO, ROBERTO CARRILLO, ED WYLIE,** and **JUAN G. GUERRA** are individuals who reside in Hidalgo County, Texas, and have made an appearance herein.

## II. Jurisdiction and Venue

4.     The action arises under 42 U.S.C. § 1983 ("Civil action for deprivation of rights") as hereinafter more fully appears.

5.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6.     This action involves a federal question arising under 42 U.S.C. § 1983.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

8.     The events forming the basis of this suit occurred in the Southern District of Texas in Hidalgo County, Texas.

## III. General Allegations

9.     Plaintiff **MARIN** is the former Director of the City of Pharr Parks and Recreation Department. **MARIN** worked eighteen (18) years for the **CITY OF PHARR**. His employment began in or about January 1998. In the near two decades of his employment, **MARIN** never received a warning, reprimand, or negative performance review. Over the course of **MARIN's** tenure with the **CITY OF PHARR** Parks and Recreation Department, he was responsible for not only the successful operation of the department, but also for millions of dollars in grant money being awarded to the **CITY OF PHARR**.

10.    It was well known in the Parks and Recreation Department that **MARIN** was a long time friend of Fred Sandoval, former City of Pharr City Manager and director of the Pharr Economic Development Corporation. **MARIN** openly supported and praised Mr. Sandoval both politically and personally while working at the Parks and Recreation Department.

11.    A new political faction/party named Pharr Forward was elected to the **CITY OF PHARR** City Commission in 2015. **MARIN** was not affiliated with or sponsored by Pharr Forward.

12.     Soon after the new City Commission was sworn in, Sandoval, who was affiliated with the other political party/faction, Pharr First, was forced to resign as City Manager. Members of the new city commission expressed a desire to replace Mr. Sandoval, and, in June of 2015, **JUAN GUERRA** was named as Interim City Manager and thereafter appointed City Manager. **GUERRA** was affiliated with Pharr Forward. Simultaneously, Sandoval was replaced at the Pharr Economic Development Corporation.

13.     Shortly thereafter, in August of 2015, **MARIN** was instructed to terminate the Tierra del Sol Golf Course Manager/Superintendent, Gabriel Cabrera, who had worked for **MARIN** during his entire tenure with the Parks and Recreation Department. **MARIN** was directed to terminate Mr. Cabrera despite no disciplinary action being taken against Cabrera in his twenty-eight (28) year career with the **CITY OF PHARR**. **MARIN** understood he was to terminate Mr. Cabrera due to Mr. Cabrera's support of Sandoval.

14.     In the weeks that followed Cabrera's termination, several other loyalists to the Sandoval faction were surreptitiously terminated and replaced with close friends of the current administration, including another member of **MARIN's** team and friend of Sandoval, Carlos Villegas.

15.     Ten days prior to **MARIN's** termination, **MARIN** was instructed at the behest of Defendant **HERNANDEZ**, **PHARR** City Mayor, to begin renting the Pharr Civic Center out for events**.** **MARIN** expressed to **HERNANDEZ** and his other superiors that there was a city ordinance in place that did not allow him to rent out the Pharr Civic Center, and that **HE** was not aware of any subsequent ordinance nullifying that long-standing ordinance.

16.     One week after the command, **MARIN** was called to a meeting in which **HE** was

chastised for not having rented out the civic center since his initial instruction to do so. Again, **HE** expressed his concern at acting directly contrary to a city ordinance. Three days after that meeting, **MARIN** was terminated.

### IV.  Plaintiff's Claims

17.     The claims mentioned below are alleged jointly and/or alternatively, with consistent and/or inconsistent facts and remedies.

**A.     Preliminary Statement**

18.     **MARIN** sues pursuant to 42 U.S.C. §1983 and 1988 and the United States Constitution and its Amendments. Section 1983 provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation under color law of any rights, privileges, or immunities secured by the United States Constitution and laws.

19.     The acts and omissions described herein violated **MARIN**'s constitutional rights, including but not limited to, those guaranteed him by the First Amendment to the United States Constitution.

20.     **MARIN** seeks compensatory damages against **CITY OF PHARR**, **TEXAS** and a reasonable attorney's fee as authorized by 42 U.S.C. § 1988.

21.     **MARIN** seeks compensatory and punitive damages against the Individual Defendants **HERNANDEZ, GUAJARDO, CARRILLO, WYLIE,** and **GUERRA**, and a reasonable attorney's fee as authorized by 42 U.S.C. § 1988.

**B.     Political Association and Expression and Freedom of Association Claim**

22.     On or about May 9, 2015, there was an election to fill seats on the City Commission and to elect a mayor. **HERNANDEZ** was elected mayor. **GUAJARDO** was elected **PHARR** City

Commissioner.

23.     **HERNANDEZ** and **GUAJARDO** were members/supporters and/or affiliated with a political party/faction called Pharr Forward.

24.     **CARRILLO**, a **PHARR** City Commissioner, was not up for reelection, but he was a member/supporter and/or affiliated with Pharr Forward. He won reelection in May 2017, as a Pharr Forward candidate.

25.     The other political party/faction was Pharr First.

26.     **MARIN** was not affiliated with or sponsored by Pharr Forward or **HERNANDEZ, GUAJARDO,** and **CARILLO**.

27.     Pharr Forward effectively took control of the City Commission after the election.

28.     Since about February 2005, Fred Sandoval had been the **PHARR** City Manager. He along with his mother actively campaigned for the Pharr First candidates. Sandoval was affiliated with Pharr First.

29.     **MARIN** was openly loyal to Sandoval who was affiliated with Pharr First. **MARIN** did not campaign for or support the Pharr Forward candidates. He was not affiliated with or sponsored by Pharr Forward. **MARIN** was also a supporter and openly loyal to former **PHARR** City Commissioner, Carlos Villegas.

30.     On or about May 26, 2015, Fred Sandoval was forced to resign as **PHARR** City Manager by **HERNANDEZ, GUAJARDO,** and **CARRILLO**. His last day with the City was on or about June 9, 2015. Sandoval was replaced by **GUERRA** who was appointed interim **PHARR** City Manager on or about June 2, 2015. **GUERRA** was affiliated with Pharr Forward. He had been **PHARR**'s Finance Director prior to replacing Sandoval.

31. In or about June 2015, Sandoval was replaced at the Pharr Economic Development Corporation.

32. About five months after the election, on or about October 2, 2015, **MARIN** was given an ultimatum by **GUERRA**, City Manager, and **WYLIE**, assistant City Manager, to resign, retire, or be terminated. Both **GUERRA** and **WYLIE** on October 2, 2015, had approved **MARIN**'s termination of employment. **MARIN** acquiesced and reluctantly chose to retire.

33. **HERNANDEZ, GUAJARDO, CARRILLO, WYLIE,** and **GUERRA** knew that **MARIN** was not politically affiliated with Pharr Forward and were motivated to terminate him because he was not a political ally of Pharr Forward, was loyal to and/or associated with Fred Sandoval, and/or was loyal to and/or associated with **PHARR** Ex-City Commissioner Carlos Villegas.

34. During his time of longtime employment with **CITY OF PHARR**, **MARIN** had a clearly established right under the First Amendment of the United States Constitution to political association and expression and freedom of association. *Elrod v. Burns*, 427 U.S. 347, 375 (1976) ("a non-policymaking, non-confidential government employee cannot be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs.").

35. On or about August 2015, Individual Defendants **HERNANDEZ, GUAJARDO,** and **CARRILLO** each, separately and collectively, specifically instructed or ordered City Manager **GUERRA** and Assistant City Manager **WYLIE** to terminate **MARIN** because he had not supported Pharr Forward, was loyal to and/or associated with Fred Sandoval, and/or was loyal to and/or associated with **PHARR** Ex-City Commissioner Carlos Villegas, in violation of the First

Amendment of the United States Constitution. However, Cabrera had to be terminated first. **GUERRA** and **WYLIE** carried out **MARIN**'s termination, motivated by **HERNANEZ**'s, **GUAJARDO**'s, and **CARRILLO**'s instruction or order and also motivated by the fact **MARIN** did not support Pharr Forward, was loyal to and/or associated with Fred Sandoval, and/or was loyal to and/or associated with Carlos Villegas.

36.   It was not objectively reasonable for Individual Defendants **HERNANDEZ, GUAJARDO, CARRILLO, WYLIE,** and **GUERRA** to instruct and/or carry out the termination of those **PHARR** City employees loyal to and/or associated with Fred Sandoval, that were loyal to and/or associated with **PHARR** Ex-City Commissioner Carlos Villegas, or that did not support and were not affiliated with Pharr Forward, including **MARIN**.

37.   **MARIN** suffered an adverse employment action in that he was forced to retire to not be terminated on or about October 2, 2015.

38.   **MARIN's** interest in his political association and expression and freedom of association outweighed Defendants' interest in promoting efficiency. As director of the City of Pharr Parks and Recreation Department, **MARIN** did not hold a policymaker or confidential position. Affiliation or loyalty was not an appropriate requirement for the position he held. **MARIN's** conduct did not impede the efficient running of the parks and recreation department.

39.   **MARIN's** interest in his political association and expression and freedom of association motivated the adverse employment action taken by Individual Defendants **HERNANDEZ, GUAJARDO, CARRILLO, WYLIE**, and **GUERRA**.

40.   As previously mentioned, **MARIN** asserts the individual Defendants' conduct constitutes a violation of his right under the First Amendment of the United States Constitution to political

association and expression and freedom of association. **MARIN's** termination from a position he successfully held for many years was due to, or in the alternative substantially motivated by, his loyalty and association with Fred Sandoval, his loyalty and association with Carlos Villegas, and/or failure to support Pharr Forward or be affiliated with or sponsored by Pharr Forward.

C.     **First Amendment Retaliation Claim**

41.    On or about September 27, 2013, **MARIN** sent a memorandum to Mayor Palacios and the City Commissioners.

42.    In the memorandum, **MARIN** requested that a city ordinance be approved allowing for the use of the Jose "Pepe" Salinas Memorial Civic Center ("Pharr Civic Center") to be used for recreational and athletic programs.

43.    No ordinance along the lines mentioned in the prior paragraph was passed.

44.    As mentioned at No. 11 above, a new political faction/party named Pharr Forward was elected that included **HERNANDEZ** being elected as mayor.

45.    **HERNANDEZ** communicated to **MARIN** that **MARIN** needed to rent the Pharr Civic Center out for recreational and athletic programs.

46.    After the election and in or about May 2015 and about ten days prior to his termination of employment, **GUERRA**, Pharr City Manager, told **MARIN** that he needed to rent the Pharr Civic Center out for recreational and athletic programs.

47.    After the election and in or about July or August 2015, **WYLIE** told **MARIN** that he needed to rent the Civic Center out for recreational and athletic programs.

48.    **MARIN** protested and told **HERNANDEZ**, **GUERRA**, and **WYLIE** that he could not rent the Civic Center out for recreational and athletic programs because it would be an illegal act

and contrary to the city ordinance in effect. He was told by all three to act contrary to the city ordinance. **GUERRA** and **WYLIE** were familiar with **CITY OF PHARR** ordinances and knew that **MARIN** could not rent out the facility.

49.  **MARIN** brings a First Amendment retaliation claim against **GUERRA** and **WYLIE** for termination of his employment.

50.  **MARIN** suffered an adverse employment action.

51.  On October 2, 2015, **GUERRA** and **WYLIE** approved **MARIN**'s termination of employment.

52.  The speech at issue was the illegality of renting out the Pharr Civic Center for recreational and athletic programs as it went against the ordinance in effect and no new ordinance had been passed.

53.  Misuse of public property, illegal activity and official malfeasance are matters of public concern.

54.  It was not within **MARIN**'s job description as the Director of the **CITY OF PHARR** Parks and Recreation Department to rent out the Pharr Civic Center.

55.  **MARIN**'s interest in commenting on matters of public concern outweighed **GUERRA** and **WYLIE**'s interest in promoting efficiency. **MARIN**'s speech did not generate controversy and disruption, impede the **CITY OF PHARR** Parks and Recreation Department's general operation or affect the working relationships necessary to the proper functioning of the Department.

56.  The speech at issue motivated the adverse employment action.

57.  One of the reasons given to **MARIN** for his termination of employment by **GUERRA**

and/or **WYLIE** was the speech at issue.

58.    **GUERRA** and **WYLIE** are not entitled to qualified immunity.

59.    Since at least 1983, public employees such as **MARIN** have had a right to be free from retaliation by a public employer for exercise of one's free speech for statements that related to a public concern. *See Connick v. Myers*, 461 U.S. 138 (1983). The constitutional right was clearly established at the time of the conduct in question.

60.    Terminating an employee for engaging in protected speech is an objectively unreasonable violation of such an employee's First Amendment rights. *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

**D.**    **Municipal Liability Claim Against the City of Pharr, Texas**

61.    **MARIN** asserts that Defendant **CITY OF PHARR, TEXAS**'s conduct reflects a policy, statement, regulation or decision adopted by the City Commission or governmental custom or persistent, widespread practice of City officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents City policy as follows:

   a.    To rid the city administration of any employee that outwardly did not support or challenged the current administration;

   b.    To rid the City administration of any employee that did not support Pharr Forward or that was not affiliated with or sponsored by Pharr Forward;

   c.    To rid the City administration of any employee that supported Pharr First;

   d.    To rid the City administration of any employee that was loyal to or associated with Fred Sandoval and/or former City Commissioner Carlos Villegas;

   e.    Retaliating against its employees for exercising their First Amendment

      freedom of speech rights; and/or

    f.    Retaliating against its employees for exercising their First Amendment political association and expression and freedom of association rights.

62.    This policy, regulation, decision, governmental custom or persistent, widespread practice is evident by not only **MARIN**'s termination, but by the termination of several employees across different departments. As such, **MARIN** asserts that this policy, regulation, decision, governmental custom or persistent, widespread practice is a clear violation of **MARIN**'s rights to political association and expression and freedom of association and/or freedom of speech rights under the First Amendment of the United States Constitution.

### V. Damages

63.    **MARIN** sues Defendants for all damages that he is entitled.

64.    **MARIN** sues for compensatory damages suffered in the past, including economic losses, lost wages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic damages, and compensatory damages that, in reasonable probability will be sustained in the future, which include economic losses, lost wages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses. **MARIN** sues for the injury to his reputation proximately caused by Defendants' conduct.

65.    **MARIN** sues Defendants for his reasonable attorney's fees in the past and future. See 42 U.S.C. § 1988.

66.    **MARIN** sues the Individual Defendants for punitive damages.

### VI. Prayer

WHEREFORE PREMISES CONSIDERED, Plaintiff **FRANCISCO MARIN**

respectfully requests that upon trial of this Court, he recover against Defendants compensatory damages, punitive damages against the individual Defendants, prejudgment and post-judgment interest as provided by law, attorney's fees, costs of court, and any such other relief at law or in equity to which he may be justly entitled.

Respectfully submitted,

/s/ Katie P. Klein
KATIE PEARSON KLEIN
State Bar No. 11561900
Southern District No. 7577
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
Southern District No. 14992
DALE & KLEIN, L.L.P.
1100 E. Jasmine Ave. Ste 202
McAllen, Texas 78501
(956) 687-8700/(956) 687-2416 (fax)
office@daleklein.com
***Attorneys for Plaintiff Francisco Marin***

**Certificate of Service**

I certify that a true and correct copy of the foregoing instrument has been served on all counsel of record by notice of electronic filing on May 17, 2018, to wit:

Ricardo Navarro/Robert L. Drinkard
DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
701 E. Harrison Ste. 100
Harlingen, Texas 78550

/s/ William D. Mount, Jr.
WILLIAM D. MOUNT, JR.